**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| AUNHK RA AUNHKHOTEP, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAPTAIN BATRICE THOMAS, et al., ) <br> ) <br> ) <br> Defendants. | Case No. 4:24-CV-01551-HEA |

**DEFENDANT LORENZO CHAPMAN'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW Defendant Lorenzo Chapman, and in support of his Motion to Dismiss, states as follows:

**INTRODUCTION**

Plaintiff Aunhk Ra Aunhkhotep (Plaintiff) brings this three-count claim against Defendant Lorenzo Chapman (Chapman) ("Lorenzo" in Complaint), and three co-defendants, Batrice Thomas (Thomas), Raymond Brown (Brown), and Bruce Borders (Borders) ("Boarders" in Complaint)[1], alleging: "[o]n April 29, 2024, Plaintiff visited St. Louis City Justice Center to record in the public lobby area and to submit Missouri sunshine record requests. Defendants Thomas, Brown, Boarders and Lorenzo entered the lobby area, beat Plaintiff about the arms, hands, back and head, leaving Plaintiff with a knot on lower right arm." (Doc. 1, at III). Plaintiff brings three claims: (1) a First Amendment claim for Plaintiff being denied his right to record in the public area of the St. Louis City Justice Center lobby; (2) a First Amendment retaliation claim for defendants

---

[1] Thomas and Brown filed a Motion to Dismiss on April 30, 2025. At the time, undersigned was not representing Chapman. Undersigned now files this Motion to Dismiss on behalf of Chapman, identical to the one filed on behalf of Thomas and Brown.

1

allegedly retaliating against Plaintiff for recording in the lobby area; and (3) a Missouri state law claim for assault. (*See* Doc. 1).

Plaintiff's allegations fail to state a claim against Chapman because Chapman is entitled to qualified immunity on the First Amendment and retaliation claims (Counts I & II); and Chapman is entitled to official immunity on the assault claim (Count III). Therefore, the Court should dismiss Defendant Chapman pursuant to Rule 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement…showing that the pleader is entitled to relief." "Although the pleading standard is liberal, the plaintiff must allege facts—not mere legal conclusions—that, if true, would support the existence of the claimed torts." *Moses.com Securities v. Comprehensive Software Systems, Inc.*, 406 F.3d. 1052, 1062 (8th Cir. 2005).

While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 545. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to defeat a motion to dismiss." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817

(8th Cir. 2010) (quotations omitted). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST CHAPMAN BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT CLAIM (COUNT I).**

The doctrine of qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct." *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). Qualified immunity is both a defense to liability and a limited "entitlement not to stand trial or face the other burdens of litigation." *Iqbal*, 556 U.S. at 672 (2009). "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

A government official is entitled to qualified immunity unless (1) he violated a plaintiff's constitutional right; and (2) that right was clearly established at the time of violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either part is no, the official is entitled to qualified immunity. *Id.*

    A.    <u>Count I should be dismissed because Plaintiff has failed to allege that Chapman violated a constitutional right.</u>

3

Plaintiff's first claim, alleging a violation of his First Amendment right, fails under the first prong of the qualified immunity analysis – namely, Plaintiff has failed to state a claim that his First Amendment rights were violated. Plaintiff alleges he has a First Amendment right to record on the premises of St. Louis City's jail, the City Justice Center (CJC); this alleged right is unsubstantiated.

Under the First Amendment, "Congress shall make no law … abridging the freedom of speech." U.S. Const. Amend. 1. This protection extends to "symbolic or expressive conduct as well as … actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). However, "it is well understood that the right of free speech is not absolute at all times and under all circumstances." *Phelps-Roper v. Ricketts*, 867 F.3d 883, 891 (8th Cir. 2017) (citations omitted). "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Under Eighth Circuit precedent, there has been no established constitutional right to record. *See Sahr v. City of Des Moines, Iowa*, 666 F.Supp.3d 861, 890 (S.D. Iowa 2023) (citing *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023)). "Even if a First Amendment right to film is established, the right may be subject to reasonable time, place, and manner restrictions." *Ness v. City of Bloomington*, 437 F.Supp.3d 714, 721 (D. Minn. 2020) (citations omitted); *see also*, *Robbins v. City of Des Moines*, 948 F.3d 673, 678 (8th Cir. 2021) ("Assuming [the plaintiff] has a constitutionally protected right to record as he was doing in this case, that right is not absolute.").

In *Ness v. City of Bloomington*, the plaintiff brought suit in part under 42 U.S.C. § 1983, alleging the defendants violated her free speech rights under the First Amendment. Civil No. 19-2882, 2020 WL 4227156, at *4 (D. Minn. July 23, 2020). There, the plaintiff recorded the area surrounding a school and public park to "collect [] information for public dissemination of possible [] violations." *Id.*, at *2. The defendants moved to dismiss plaintiff's First Amendment claim under

4

the doctrine of qualified immunity. *Id.*, at *7. The Court granted defendants' motion holding, "[t]he officers are entitled to qualified immunity because [the plaintiff] cannot satisfy either of the two required prongs to exempt her claim from qualified immunity protection." *Id.*, at *8. "Here, [plaintiff] has not provided authority clearly establishing a First Amendment right to record private individuals who do not consent to being filmed, particularly when, as here, the individuals are required by law to be at the location where they are being recorded." *Id.*

Similarly, here, Plaintiff fails to allege any constitutional right – whether under the First Amendment or otherwise – which would warrant unfettered access to record at a maximum-security facility, and for good reason. Recording in a maximum-security facility can create danger and risk, compromise security measures, embarrass or cause harassment of visitors of detainees, and/or distract correctional officers from doing their jobs. *See United States v. Dozier*, 31 F.4th 624, 630 (8th Cir. 2022) ("Introducing [] cell phones into prison is a serious security threat…[C]ell phones can be used to arrange delivery of drugs and weapons, order hits, and coordinate escapes."). In the Eighth Circuit, the right to record, if it exists at all, only exists in specific circumstances, restricted to a reasonable time, place, and manner. *Ness*, 437 F.Supp.3d at 721. Here, because of the potential dangers as described above, it was reasonable for Plaintiff's recording ability to be limited at City's maximum-security jail, and Plaintiff provides no support to the contrary. Like the plaintiff in *Ness*, any right to record that Plaintiff had would be restricted by the place of his recording, and here, his recording was reasonably restricted. *Ness*, 2020 WL 4227156, at *8.

Thus, because Plaintiff has failed to allege that Chapman violated any First Amendment right, Chapman is entitled to qualified immunity, and Count I should be dismissed with prejudice.

> B.   <u>Count I should be dismissed because Plaintiff's right to record in City's jail was not clearly established.</u>

Even if this Court finds that recording in the CJC is a constitutional right under the First

5

Amendment, which it is not, Chapman is still entitled to qualified immunity where Plaintiff's First Amendment right to record at the CJC was not clearly established.

In order for a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted).

Further, it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 580 U.S. at 79 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "The clearly established law must be 'particularized' to the facts of the case." *Id.* "Otherwise, plaintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (citing *Anderson*, 483 U.S. at 639). "Because qualified immunity protects officials who make bad guesses in gray areas, it gives them breathing room to make reasonable but mistaken judgments." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (citations omitted). "The plaintiff[] [has] the burden of showing that the law was clearly established." *Id.*

Recording in a jail lobby is not a right established beyond debate so much so that Chapman would have been on notice that their conduct was unlawful. *See White*, 580 U.S. at 79 ("While this Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015))).

In this Court's initial review of the Complaint, the Court noted that other Circuits have held that the First Amendment protects the acts of recording public officials. (Doc. 5). While Chapman

6

concedes that other Circuits have recognized this right under the First Amendment, notably the Eighth Circuit has not. Multiple District Courts within the Eighth Circuit have compared this discrepancy amongst circuits and have held that Eighth Circuit law states there is no right to record under the First Amendment. *See Sahr*, 666 F.Supp.3d at 890 ("The Eighth Circuit's position is contrary to 'the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits [, which] have all concluded in published opinions that the First Amendment protects a right to film the police performing their duties in public'" … "Despite the majority of circuits holding otherwise, this Court is bound by Eighth Circuit precedent." (quoting *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022); *Keup v. Sarpy County*, 709 F.Supp.3d 770, 793 (D. Neb. 2023) ("assuming arguendo that the right to record officers is clearly established in three other circuits, [plaintiff's] argument still fails… '[W]hile in the absence of binding precedent, a court should look to all available decisional law, including decisions of state courts, other circuits, and district courts,' the Court does not believe that a precedent adopted in only three circuits sets out a standard 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" (quoting *K.W.P. v. Kansas City Pub. Sch.*, 931 F.3d 813, 828 (8th Cir. 2019).

As the Court noted in its review (Doc. 5), an individual's right to record has limited discussion in the Eighth Circuit; however, every case that has discussed this right has granted public officials qualified immunity. For example, in *Molina*, plaintiffs brought a First Amendment claim against defendant-officers related to officers' use of force during a protest; one plaintiff was recording the event and one plaintiff was observing. 59 F.4th at 337. In granting the officers qualified immunity, the Eighth Circuit held there was not a clearly established First Amendment right to observe and record police-citizen interactions in 2015. *Id.* at 340. In *Robbins*, defendant-officers observed the plaintiff recording "both vehicles near the police station and officers and

7

civilian employees entering and leaving the police station." 984 F.3d at 678. "The officers also possessed other significant information: they were aware of recent criminal activity involving cars parked in the area, and they were area of a previous filming and stalking incident that escalated into the murder of two officers." *Id.* Given the location and subject of the recording, the Eighth Circuit held "we can neither say that the officers' conduct was objectively unreasonable under clearly established law, nor in violation of the First Amendment." *Id. See also Keup*, 709 F.Supp.3d at 793 (defendant was entitled to qualified immunity because plaintiff did not establish that observing nor recording police at a protest was a clearly established right); *Sahr*, 666 F.Supp.3d at 889-90 (defendant was entitled to qualified immunity against plaintiff's First Amendment claim related to his arrest following him recording and observing officers during a protest, because plaintiff could not establish this right was clearly established in the Eighth Circuit); *Ness v. City of Bloomington*, 2020 WL 4227156, at *8 (defendants were entitled to qualified immunity because they did not violate plaintiff's right to engage in filming, and even if they did, that right was not clearly established).

Further, it is not clearly established that any right to record would be extended to a maximum-security facility, like the CJC here. In *Robbins*, the Eighth Circuit held that even if plaintiff had a right to record, this is not an absolute right, and the context surrounding the recording must be taken into consideration (*see supra*). 984 F.3d at 678. Given the location and context here, based on what Plaintiff has alleged, Plaintiff was recording in the lobby of City's maximum-security jail. (*See* Doc. 1, at III). Chapman can find no precedent which clearly establishes that Plaintiff had a right to record in such a location and context, and Plaintiff has not, and cannot, cite to such precedent which clearly establishes his right to record at this type of

8

location. Thus, Plaintiff's right to record, if any, was not clearly established in the context and location at issue here, and so, Chapman is entitled to qualified immunity.

In this Court's initial review of the Complaint, the Court interpreted Plaintiff's first claim as a "Right to Record Government Officials." (Doc. 5). Notably, however, Plaintiff never alleges he was attempting to record government officials; instead, he alleges generally that he was recording in the public area of the lobby. (Doc. 1). The Complaint is entirely silent about what Plaintiff was recording.[2] Therefore, the Court's analysis regarding the recording of public officials is unsupported based on the scarcity of facts alleged in the Complaint.

Even if this Court persists in interpreting Plaintiff's actions as recording government officials, the recording of government officials is subject to reasonable time, place, and manner restrictions. For example, in *Glik v. Cunniffe*, the First Circuit found that the filming of government officials engaged in their duties in a public place was within First Amendment protections, but such recordings were nevertheless subject to reasonable time, place, and manner restrictions. 655 F.3d 78, 84 (1st Cir. 2011); *see also Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3rd Cir. 2017) ("We do not say that all recording is protected or desirable. The right to record police is not absolute. It is subject to reasonable time, place, and manner restrictions.") (citations omitted). If this Court were to adopt the holdings of other circuit courts and find that Plaintiff had a right to record public officials, Plaintiff's right under the circumstances here – namely, the recording of public officials in a maximum-security facility – should be restricted given its time, place, and manner.

---

[2] Based only on the four corners of the Complaint, Plaintiff could have been documenting where security cameras were located in the jail lobby or officials entering access codes to secure areas in the jail.

9

Thus, Plaintiff failed to allege that Chapman violated a constitutional right, and that such right was clearly established at the time of the violation; therefore, he is entitled to qualified immunity and claim 1 should be dismissed with prejudice.

**II.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST CHAPMAN BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM (COUNT II).**

"To prevail on [a] retaliation claim, the plaintiffs must show that they engaged in protected [First Amendment] activity." *Molina*, 59 F.4th at 338 (citations omitted). "If they can make that showing, then the focus shifts to whether the officers took [an] adverse action … that would chill a person of ordinary firmness from continuing in the [protected] activity." *Id.* (citations omitted). "If they did, then the next hurdle is causation: was the First Amendment activity a 'but-for-cause' of the injury?" *Id.* "Establishing the violation itself, however, is only half the battle. Getting past qualified immunity requires the plaintiff to show that it would have been 'sufficiently clear [to] every reasonable official…that what [they were] doing violate[d]' the First Amendment." *Id.* (quoting *Reichle v. Howards*, 556 U.S. 658, 664 (2012)).

   A.     <u>Plaintiff's conclusory allegations fail to state a claim for retaliation.</u>

Plaintiff's retaliation claim fails because, as discussed above, Plaintiff has failed to allege that he was engaged in protected First Amendment activity. *Molina*, 59 F.4th at 338. If there is no violation of a constitutional right, Plaintiff's retaliation claim has no merit. *Id.* Therefore, Plaintiff's retaliation claim fails on the first prong of a retaliation claim.

Further, Plaintiff's retaliation claim also fails because Plaintiff has not sufficiently alleged facts which demonstrate a causal connection between his First Amendment activity, if any, and the retaliation he believes he suffered. "To prevail on [a retaliatory] claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's

10

'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury." *Id.* (emphasis in original). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399.

Conclusory allegations that Chapman retaliated against Plaintiff are insufficient to state a claim for First Amendment retaliation. In *Haidari v. Mayorkas*, the plaintiff filed a retaliation claim against defendants, alleging defendants "inflicted the alleged travel delays, interrogations, searches, and seizures in retaliation against him for filing [a] 2006 lawsuit." 22-CV-2939, 2020 WL 5487351, at *6 (D. Minn. August 24, 2023). In dismissing the plaintiff's claim, the court held the complaint failed to state a claim for First Amendment retaliation because the plaintiff failed to assert specific facts which would give rise to a retaliatory animus. *Id.*, at *7 ("In the absence of any facts to support his conclusory assertions of retaliation, [plaintiff's] First Amendment retaliation claim must be dismissed.").

Here, Plaintiff has made one conclusory allegation with respect to retaliation – that the cause of Chapman's alleged actions was Plaintiff recording in the CJC lobby. As in *Haidari*, where the court dismissed the plaintiff's retaliation claim for failing to allege plausible facts which demonstrated a retaliatory animus between the defendants' acts and the plaintiff's First Amendment activity, here, the Court should dismiss Plaintiff's retaliation claim for only making conclusory statements, and not supporting these statements with allegations of plausible facts. As is, Plaintiff has pled nothing more than a "the defendant-unlawfully-harmed-me accusation, which fails to state a claim." *Ashcroft*, 556 U.S. at 678.

11

Therefore, because Plaintiff has not supported his retaliation claim with sufficient non-conclusory facts, Count II must be dismissed, with prejudice.

      B.      <u>Count II should be dismissed where Chapman is entitled to qualified immunity.</u>

Even if this Court were to find that Plaintiff has sufficiently alleged a retaliation claim, Plaintiff's claim still fails because Chapman is entitled to qualified immunity. As discussed above, there is no clearly established right to record in a jail facility. In *Molina*, the plaintiffs brought First Amendment retaliation claims against various officers. 59 F.4th 334, 337. Defendants moved for summary judgment on the grounds of qualified immunity, their motion was denied, and they appealed. *Id.* There, the plaintiffs claimed that "what they did, which was observe and record police conduct during the St. Louis protest…" was protected under the First Amendment. *Id.* at 338. The Eighth Circuit held "observing and recording police-citizen interactions was not a *clearly established* First Amendment right in 2015." *Id.* (emphasis in original). In its thorough analysis of prior case law, the Court found no case establishing a clear right to record police activity, and therefore qualified immunity protected defendants from suit for the retaliation claim. *Id.* at 338-43.

Similar to *Molina*, the Plaintiff here is bringing a retaliation claim for his alleged right to record. (Doc. 1). As in *Molina*, where the Court found there was no clearly established right to record, in the present case, there is still no clearly established right to record. Therefore, as in *Molina* where the Court granted officers qualified immunity, here too, the Court should grant Chapman qualified immunity for the retaliation claim.

Therefore, because Chapman is entitled to qualified immunity, Plaintiff's retaliation claim fails and Count II should be dismissed with prejudice.

**III.**      **CHAPMAN IS ENTITLED TO OFFICIAL IMMUNITY ON PLAINTIFF'S CLAIM OF ASSAULT/BATTERY.**

12

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary actions or omissions." *Brandy v. City of St. Louis*, 75 F.4th 908, 917 (8th Cir. 2023). "The official immunity doctrine serves an important function in our society. . . . [S]ociety's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985). "'Simply put, a plaintiff must plead facts establishing an exception to official immunity…to survive a motion to dismiss for failure to state a claim.'" *Harmon v. Second Judicial Circuit*, 728 F.Supp.3d 992, 1009 (E.D. Mo. 2022) (quoting *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. 2014)).

There is "a narrow exception to the application of the official immunity doctrine — i.e., when a public officer fails to perform a ministerial duty required of him by law, he may be personally liable for the damages caused." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019) (citation omitted). "[A] ministerial act has long been defined as merely 'clerical'" and "compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *Id.* (citations omitted). "[A] ministerial or clerical duty is one in which a certain act is to be performed 'upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed.'" *Id*. (citation omitted). "Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task — by definition — is not ministerial." *Id*. (citation omitted). "[A] ministerial function is the antithesis of a function that is left to be performed in a

13

manner the acting official believes to be 'appropriate' or 'suitable.'" *Warren v. State*, 939 S.W.2d 950, 954 (Mo. App. W.D. 1997).

Another exception to official immunity is malice. "Official immunity will not protect a public official from liability if that official performs a discretionary duty with malice." *See Laughlin v. Perry*, 604 S.W.3d 621, 625 (Mo. 2020) (citing *Alsup*, 588 S.W.3d at 190). In order for the plaintiff to show malice there must be evidence that the official had an actual intent to injure the plaintiff. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 498 (Mo. 2024). Recklessness or gross negligence does not amount to malice. *Id.* ("Malice…is the only mental state to which official immunity does not apply under Missouri law.").

The burden is on the plaintiff to allege facts establishing that an exception to the official immunity doctrine applies. *Stephens*, 453 S.W.3d at 251 (citations omitted). Importantly, "'[i]mmunity' connotes not only immunity from judgment but also immunity from suit." *Alsup*, 588 S.W.3d at 190 (Mo. 2019) (citations omitted).

Here, Plaintiff alleges in conclusory fashion, "Defendant Thomas, Brown, Boarder and Lorenzo assaulted Plaintiff for filming." (Doc. 1, at III). It is hard for Chapman to imagine a judicial system, under the *Iqbal-Twombly* framework, where this statement would survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. Plaintiff has merely pled conclusory allegations, making no more than a "the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. However, out of an abundance of caution, Chapman argues that even if this Court finds this conclusory allegation to be sufficient to state a claim, the claim still fails because Chapman is entitled to official immunity.

Plaintiff fails to plead an exception to official immunity because Plaintiff alleges neither that Chapman was engaged in a ministerial act rather than a discretionary one; nor that Chapman

14

acted with malice. Plaintiff alleges that Chapman used force on him, but it is well-established that an officer's use of force is discretionary, warranting official immunity. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) ("[an] [] officer's decision to use force in the performance of his duties is discretionary rather than ministerial."). Thus, Chapman's use of force, if any, was discretionary, not ministerial, which entitles them to official immunity.

Further, Plaintiff has not alleged facts from which this Court can plausibly surmise that Chapman acted with malice. Plaintiff's allegations that Chapman assaulted Plaintiff, on its own, without more, is insufficient to meet the malice exception to official immunity. *See Jacobson v. Metropolitan St. Louis Sewer Dist.*, 4:14-CV-01333-AGF, 2014 WL 7027881, at *6 (E. D. Mo. December 11, 2014) ("Plaintiffs have not pleaded that [Defendant] acted in bad faith or with malice in this case…Therefore, at this stage, the Court will grant Defendants' motion to dismiss with respect to Plaintiffs' assault claim..."); *Coates v. Powell*, 650 F.Supp.2d 932, 943 (W.D. Mo. 2009) (dismissing plaintiff's assault claim on summary judgment because plaintiff did not argue or show evidence that defendant acted with malice or bad faith). As is, the Complaint fails to allege any facts giving rise to malice, and thus, Chapman is entitled to official immunity on Plaintiff's state claim of assault/battery.

Therefore, Chapman is entitled to official immunity and Count III must be dismissed with prejudice.

## CONCLUSION

Because Chapman is entitled to qualified immunity on Plaintiff's First Amendment and retaliation claims, and official immunity on Plaintiff's assault claim, Chapman requests Plaintiff's Complaint be dismissed with prejudice, pursuant to Rule 12(b)(6), and for any other relief this Court deems just and proper under the circumstances.

**Respectfully Submitted,**
**MICHAEL GARVIN**
**CITY COUNSELOR**

By: */s/ Jay Hollman*
Jay Hollman #76649 (MO)
Assistant City Counselor
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-3361
Fax: 314-622-4956
HollmanJ@stlouis-mo.gov

*Attorney for Defendants Batrice Thomas,*
*Raymond Brown, and Lorenzo Chapman*

## CERTIFICATE OF SERVICE

I hereby certify the foregoing was electronically filed on May 5, 2025 with the Clerk of the Court to be served by operation of the Court's electronic filing system, and was mailed via first class mail, postage prepaid, and ordinary mail, to the following non-participant in the Electronic Case Filing System:

Aunhk Ra Aunhkhotep
5411 Robin Avenue
St. Louis, MO 63120

*/s/ Jay Hollman*
